The Full Commission has reviewed the prior Opinion and Award based on the record of the proceedings before Deputy Commissioners Edward Garner, Jr., and George T. Glenn, II, and the briefs and oral arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence, receive further evidence or to amend the prior Opinion and Award. The Full Commission itself has determined that it will make certain modifications upon review of the facts and of the law. The Full Commission therefore modifies and affirms the Opinion and Award of the Deputy Commissioner and awards attorney fees pursuant to both N.C. Gen. Stat. § 97-88.1 and N.C. Gen. Stat. § 97-88.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An Employer-Employee relationship existed between the Plaintiff and the Defendant-Employer.
3. Plaintiff's average weekly wage was $402.50, which yields a compensation rate of $268.35 per week.
4. Plaintiff suffered an injury by accident on 5 May 1995, resulting in an injury to her back.
5. The Defendant-Employer admitted liability and the parties entered into a Form 21 Agreement.
6. An issue to be determined by the Commission is whether Plaintiff in fact returned to gainful employment with another employer in 1995.
 * * * * * * * * * * *
The Full Commission finds facts as follows:
 FINDINGS OF FACT
1. Plaintiff was a utility operator for Defendant, having commenced her employment on 22 August 1994. At the time of injury on 5 May 1995, she was a full time employee of Defendant. Her back injury, which caused an aggravation of a pre-existing non disabling back condition, resulted when she attempted to unload a container of heavy materials. The 5 May 1995 injury by accident resulted in disabling injury. On previous occasions she had assistance from other workers but on this occasion the other workers said they were too busy to help and the container thus became fuller and heavier than usual.
2. After the injury, Plaintiff saw Dr. T. Craig Derian, who diagnosed disc degeneration at L4-L5, L5-S1, Grade 1 spondylolisthesis with right L5 radiculopathy. He recommended, as one treatment option, a fusion surgery of her back. Dr. Derian performed a discogram on 4 October 1995 which confirmed his diagnosis of Grade 1 spondylolisthesis and degenerative disc disease at L5-S1 with a posterior annular tear at L4-5. An EMG nerve conduction study performed on 10 October 1995 revealed mild changes in the tibialis anterior nerve consistent with chronic right L5-L4 radiculopathy.
3. Dr. William Lestini of the Triangle Back and Spine Clinic performed an Independent Medical Evaluation of Ms. Lewis at Defendants' request on 1 January 1996. He agreed with Dr. Derian that Plaintiff was suffering from degenerative disc disease with annular tears that needed to be corrected through a lumbar decompression, stabilization and fusion surgery.
4. The Defendant Servicing Agent sent Plaintiff to yet another Independent Medical Evaluation by Dr. Robert W. Elkins in Greensboro, North Carolina. Dr. Elkins conducted an Independent Medical Evaluation on June 2, 1996. Dr. Elkins reviewed the medical reports from Drs. Derian and Lestini and conducted his own physical examination of Plaintiff. Dr. Elkins agreed with the other two doctors that surgery was a serious option in this case.
5. A functional capacity evaluation was performed on the Plaintiff on 15 June 1995. The results indicated that there was no symptom magnification, that Plaintiff was eligible only for light work, had lifting restrictions of 20 pounds on an occasional basis, 10 pounds on a frequent basis and that she had a poor prognosis to return to medium employment.
6. Dr. Derian was of the opinion that Plaintiff could return to light work, but the employer indicated that there was no light work available for Plaintiff to perform. Accordingly, the employer paid temporary total disability to the Plaintiff pursuant to the Form 21 until a Form 28T was filed on or about 1 July 1996. The Form 28T alleged that "the employee has returned to work for another employer and Plaintiff was self-employed without employer's knowledge." The employer ceased paying temporary total disability as of 16 July 1996, pursuant to the Form 28T. Form 28T is to be used only when there is a trial return to work either with the same employer or another employer.
7. Defendant-Employer had hired Hilton Investigative Services, Inc. of Raleigh, NC, on 19 July 1995. Hilton was instructed to conduct a surveillance of the Plaintiff and document all of her activities. Hilton conducted a surveillance of the Plaintiff on June 9 and June 20 of 1995 which showed her driving a vehicle. Hilton also claimed that through a "discreet" phone call they determined that the Plaintiff owned and operated a company known as Burlington Care Center. Plaintiff in fact does not own or operate any company.
8. On 12 December 1995 Defendant-Employer hired CSI Investigative Services to surveil Plaintiff again. CSI conducted a surveillance of Plaintiff on six occasions beginning on 21 December 1995 and ending on 16 February 1996. The activities observed mainly consisted of Plaintiff driving a vehicle. CSI also obtained documents indicating that Plaintiff appeared before the City of Burlington's Board of Adjustment to obtain a special use permit for property located at 421 Alamance Road, Burlington, NC. Plaintiff admitted that she did so without pay on behalf of her parents who operated four adult care facilities in Alamance and Caswell Counties.
9. Defendant-Employer again hired CSI to surveil the Plaintiff beginning on 13 May 1996. CSI observed Plaintiff on six different days beginning on 15 May 1996 and ending 7 June 1996. On 5 June 1996, CSI videotaped the claimant mowing grass, using a riding lawn mower with an automatic transmission and power steering on a relatively level lot. Claimant mowed the lawn for approximately one and a half hour with several breaks.
10. Plaintiff assisted her husband who has a small lawn cutting business. She has mowed lawns on perhaps five different occasions since the injury on 5 May 1995 until she was videotaped in June of 1996. She received no compensation for her services, but rather did so because she was tired of sitting at home. Plaintiff is not an employee for any of her parents' businesses, but appeared before the Board of Adjustment on her mother's behalf. She received no compensation for her efforts but did so out of love and affection for her mother.
11. Plaintiff has not reached maximum medical improvement in light of the recommendation that she undergo fusion decompression surgery.
12. Defendant-Employer filed a Form 28T on 16 July 1996, alleging that Plaintiff "has returned to work for another employer and/or was working in a self-employed capacity without employer's knowledge." The employer relied on a videotape provided by a detective agency showing the Plaintiff on a riding lawn mower with an automatic transmission slowly mowing a relatively flat area. The detective agency surveiled the Plaintiff for a period of four months off and on, and videotaped the Plaintiff on only one occasion performing what can only be described as light duty effort which had previously been approved by the treating physician. The employer also relied, among other things, upon plaintiff's appearance before the City of Burlington's Board of Adjustment and a newspaper article concerning that appearance.
13. The Defendant-Employer had already indicated light duty was not available to the Plaintiff. Plaintiff did not receive any compensation for mowing or for appearing before the Board of Adjustment. Without any further inquiry of the Plaintiff, or Plaintiff's husband, Defendant summarily terminated Plaintiff's compensation, purportedly pursuant to N.C. Gen. Stat. §97-18.1(b).
14. There is insufficient evidence in the record to prove that Plaintiff has returned to gainful employment as Defendants alleged.
15. At the time of filing the Form 28T, Defendants had no evidence that plaintiff was attempting a trial return to work. Filing the Form 28T without knowledge from the same employer or a different employer that the employee and employer had agreed to a trial return to work was improper use of the Form 28T. The resulting litigation in support of the improper use of the Form 28T was unfounded. Thus this hearing has been brought and prosecuted by the Defendants without reasonable ground.
 * * * * * * * * * * *
Based on the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. Since there is insufficient evidence in the record to show that Plaintiff has returned to gainful employment with another employer, the Defendants cannot prevail.
2. N.C. Gen. Stat. § 97-18.1 (a) provides: "Payments of compensation pursuant to an award of the Commission shall continue until the terms of the award have been fully satisfied."
3. A Form 21 approved by the Industrial Commission is an award of the Industrial Commission.
4. N.C. Gen. Stat. § 97-18.1 (b) provides:
 "An employer may terminate payment of compensation for total disability being paid pursuant to G.S. 97-29 when the employee has returned to work for the same or a different employer, subject to the provisions of G.S. 97-32.1 [trial return to work], or when the employer contests a claim pursuant to G.S. 97-18(d) within the time allowed thereunder. The employer shall promptly notify the Commission and the employee, on a form prescribed by the Commission, of the termination of compensation and the availability of trial return to work and additional compensation due the employee for any partial disability."
 The preceding paragraph allows an employer to terminate the employee's compensation without first applying to the Commission for permission to terminate the compensation. The statute does not require the employer to terminate payment of compensation. Instead, it permits the employer to terminate compensation in the event that the employee has returned to work for the same employer or a different employer. The reason the drafters of the statute allow an employer to unilaterally terminate payment of compensation when an employee has returned to work is to avoid overpayment of compensation to the employee. If the employer has definite evidence, either in the form of its own knowledge that the employee has returned to work with that employer or information from another employer or the employee that the employee has taken another job, it would be inefficient for the employer to have to seek approval of the Commission before termination of compensation because it would clearly result in overpayment to the employee. However, it is also quite clear from a reading of subparagraph (b) that the employer must definitely be certain that the employee has returned to work and have conclusive evidence to establish the employment. The statutory language is definite and emphatic that the employer can terminate compensation "when the employee has returned to work." Only then can the employer determine whether there is any partial disability compensation owed to the claimant as is allowed for under N.C. Gen. Stat. § 97-32.1 and the provisions of N.C. Gen. Stat. § 97-18.1(b).
5. When the evidence does not definitely indicate the claimant is working the employer must proceed pursuant to N.C. Gen. Stat. § 97-18.1(c), which provides:
 (c) An employer seeking to terminate or suspend compensation being paid pursuant to G.S. 97-29 for a reason other than those specified in subsection (b) of this section shall notify the employee and the employee's attorney of record in writing of its intent to do so on a form prescribed by the commission. A copy of the notice shall be filed with the Commission. This form shall contain the reasons for the proposed termination or suspension of compensation, be supported by available documentation, and inform the employee of the employee's right to contest the termination or suspension by filing an objection in writing with the Commission within 14 days of the date the employer's notice is filed with the Commission or within such additional reasonable time as the Commission may allow.
 The preceding paragraph culminated in the Industrial Commission's Form 24 procedure, which provides for an informal telephone hearing, followed by a full evidentiary hearing if either party is dissatisfied with the results. This is the proper procedure where the employer is uncertain whether the employee has returned to work. It preserves the disability payments to the employee until it is determined that they are no longer proper.
6. Since Plaintiff has not reached maximum medical improvement and is restricted to light duty which the Defendant-Employer cannot provide, Plaintiff is entitled to continue receiving temporary total disability benefits until such time as she reaches maximum medical improvement, has been released to return to work and until Defendant has rebutted the presumption of continuing disability. N.C. Gen. Stat. § 97-29.
7. Defendants brought this appeal and Defendants are by this Opinion and Award ordered to continue making disability payments to Plaintiff. Therefore, Plaintiff, pursuant to N.C. Gen. Stat. § 97-88 and in the discretion of the Commission, is entitled to reasonable attorney's fees.
8. Defendants brought and prosecuted this proceeding without reasonable ground, and, pursuant to G.S. 97-88.1, the Commission may assess the whole cost of the proceedings including reasonable fees for plaintiff's attorney upon the party who has brought them.
 * * * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendants shall reinstate temporary total disability benefits to the Plaintiff effective July 16, 1996, at the compensation rate of $268.35 per week. That compensation which has accrued shall be paid to Plaintiff in a lump, subject to attorney's fees as set forth below.
2. Defendants shall provide the medical treatment as recommended by Dr. Derian so long as it effects a cure and gives relief to Plaintiff. This treatment shall include the surgery as recommended by Dr. Derian if Plaintiff elects to have such surgery.
3. An attorney's fee in the amount of twenty-five percent of the Award which has accrued as set forth in Paragraph 1 above shall be paid to Plaintiff's counsel. In addition, every fourth check due Plaintiff after payment of the lump sum amount shall be sent directly to Plaintiff's counsel. Defendants shall pay $3,500.00 to plaintiff's counsel pursuant to N.C. Gen. Stat. § 97-88.1 as part of the bill of costs. Additionally, Defendants shall pay Plaintiff's attorney the sum of $1,000.00 as reasonable attorney's fee for defending this appeal, pursuant to N.C. Gen. Stat. § 97-88.
4. Defendants shall pay the costs due the Commission.
This 18th day of August, 1998.
 S/ _____________________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
S/ _____________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
S/ __________________ RENÉE RIGGSBEE COMMISSIONER